UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WESTERN SURETY COMPANY | CIVIL ACTION |
| VERSUS | NO. 23-1097 |
| MAGEE EXCAVATION & DEVELOPMENT, LLC, *et al.* | SECTION M (2) |

## ORDER & REASONS

Before the Court is a motion for preliminary injunction filed by plaintiff Western Surety Company ("Western Surety").[1] Defendants Magee Excavation & Development, LLC, Magee Builders, LLC, Magee Equipment, LLC, and Magee Development, LLC respond in opposition.[2] The Court held an evidentiary hearing on the motion for preliminary injunction on May 4, 2023. Having considered the parties' memoranda, the evidence,[3] argument presented at the hearing, and the applicable law, the Court issues this Order & Reasons granting the motion.

## I. BACKGROUND

On December 5, 2018, Western Surety agreed to issue performance and payment bonds to Magee Excavation & Development, LLC ("Magee Excavation") for various public construction projects throughout Louisiana.[4] As a condition precedent to Western Surety's issuance of such bonds, however, Western Surety required Magee Excavation, as well as its owner, Skip Magee, his spouse, Jessica Magee, and three limited liability companies also owned by Skip Magee (*viz.*,

---

[1] R. Doc. 23.
[2] R. Doc. 30. Defendants Skip Magee and Jessica Magee join the opposition. R. Doc. 29.
[3] This evidence includes the parties' joint stipulation of facts, R. Doc. 38-1, which was introduced at the May 4, 2023 preliminary injunction hearing, as well as the exhibits admitted at the hearing (hereinafter, "PI Exh."). Exhibits 1 through 48 were admitted jointly by stipulation. Also admitted at the hearing by agreement was exhibit 49, paragraphs 1 through 8. Additionally, the Court heard testimony from Richard Shepherd, senior claims counsel for CNA Surety, the company responsible for handling the bond claims related to the bonds Western Surety issued to Magee Excavation. *See also* R. Doc. 23-3 (affidavit of Richard Shepherd).
[4] R. Docs. 23-1 at 1; 23-3 at 2; 30 at 1; 38-1 at 1, 3.

Magee Builders, LLC, Magee Equipment, LLC, and Magee Development, LLC) (collectively, the "Indemnitors") to enter into a General Agreement of Indemnity ("GAI") in favor of Western Surety.[5]  The GAI provides Western Surety with a right to indemnification as to "any Claim or Loss":

> 3. INDEMNITY.  Indemnitors shall jointly and severally exonerate, indemnify, protect, defend and hold [Western] Surety harmless from and against any Claim or Loss which [Western] Surety may incur, sustain or pay, arising from or related to any Bond, any Claim, this Agreement, or any act of [Western] Surety to protect or procure any of [Western] Surety's rights, protect or preserve any of [Western] Surety's interests or to avoid or lessen [Western] Surety's liability or alleged liability.[6]

Subparagraph 3(a) of the GAI also provides Western Surety with the right to demand that the Indemnitors deposit collateral security for any "actual or potential liability or Loss":

> a. [The Indemnitors shall] place [Western] Surety in funds by depositing with [Western] Surety, immediately on demand, collateral security in kind and amount satisfactory to [Western] Surety in its sole discretion as [Western] Surety determines is necessary or expedient to fully protect [Western] Surety from actual or potential liability or Loss, including any increase of such deposit required by [Western] Surety.  Such funds may be used to pay Loss or may be held by [Western] Surety as collateral against potential future Loss.[7]

The GAI defines "Loss" as:

> [A]ll premiums and charges for Bonds and any and all actual or contingent liability, loss, Claims, damages, court costs and expenses, court and attorneys' fees and costs, consultant fees, interest, and all other costs and expenses incurred by [Western] Surety in connection with any Bond, any Bonded Contract or this Agreement.  Loss includes without limitation: (a) [Western] Surety's costs in making any independent investigation of a Claim, demand or suit; (b) [Western] Surety's own attorney's fees and consultant fees and costs (excluding in-house counsel); (c) [Western] Surety's costs to procure, or attempt to procure, release from liability under a Bond; (d) [Western] Surety's costs to enforce this Agreement; and (e) any other cost incurred by [Western] Surety in Good Faith as a result of having issued a Bond.  Loss further includes all liability, cost and expense arising from or related to Advances or Project Financing.  Pre-judgment and post judgment

---

[5] R. Docs. 23-1 at 1-2; 23-2 at 5-7; 30 at 1-2; 38-1 at 1.
[6] R. Doc. 23-2 at 1.
[7] *Id.*

> interest shall accrue from the date of any payment made by [Western] Surety with respect to any of the foregoing at the maximum default rate permitted by law.[8]

And "Claim" or "Claims" is defined in the GAI as:

> [A]ny notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond, any Bonded Contract, or this Agreement.[9]

Western Surety established that it has incurred losses as defined by the GAI as a result of its issuance of bonds to Magee Excavation with respect to eight different public construction projects in various parts of south Louisiana.[10] Specifically, Western Surety has been forced to investigate, defend, and satisfy numerous payment bond claims[11] (and now faces performance bond claims[12]) because Magee Excavation "abandoned" five of the projects prior to completion and "left behind scores of unpaid subcontractors and suppliers on all eight jobs."[13] In addition to those losses, and as a result of Magee Excavation's defaults on the bonded projects, Western Surety has incurred and continues to incur consultant and attorney's fees to investigate, defend, and settle the performance and payment bond claims and to enforce the GAI.[14]

On December 7, 2022, Western Surety demanded in writing, pursuant to the collateral security provision of the GAI, that the Indemnitors immediately deposit with the surety cash or cash equivalents in the amount of $782,663.42, which reflected its known loss at that time.[15] This request went unanswered by the Indemnitors and no collateral was posted.[16] On March 17, 2023,

---

[8] *Id.* at 4.
[9] *Id.* at 3.
[10] R. Docs. 1 at 6; 23-1 at 2; *see supra* note 3.
[11] *See* PI Exhs. 12; 13.
[12] At least four of the project owners have notified Magee Excavation of their intent to terminate the company's involvement in their respective projects. *See* PI Exhs. 28; 30; 36; 37.
[13] R. Doc. 23-1 at 2; *see supra* note 3; R. Doc. 1 at 6-12. The parties stipulate that "Magee Excavation did not complete five of the eight projects." R. Doc. 38-1 at 3.
[14] R. Doc. 1 at 12; *see supra* note 3.
[15] R. Docs. 1 at 13; 23-1 at 7; 23-4 at 1-3; PI Exh. 10.
[16] R. Docs. 1 at 13; 23-1 at 7; 23-5 at 1.

Western Surety sent the Indemnitors an updated demand, this time requesting a collateral deposit in the amount of $2,177,384, reflecting that its known loss had increased.[17] Again, the Indemnitors failed to post collateral security as required by the GAI.[18] Following these unanswered demands, in late March, Magee Excavation advised Western Surety that the company could not continue to work on any of the outstanding projects.[19]

Western Surety filed suit against the Indemnitors on March 29, 2023, seeking, *inter alia*, indemnification under the GAI, specific performance of the collateral security provision of the GAI, and a preliminary and permanent injunction ordering the Indemnitors to immediately deposit collateral security and to abstain from interfering with its rights under the GAI.[20]

## II.   PENDING MOTION

Western Surety seeks a preliminary injunction (1) ordering the Indemnitors to indemnify it from any and all loss it sustains as a result of having issued the eight bonds to Magee Excavation; (2) enjoining the Indemnitors from interfering with Western Surety's exercise of its rights under the GAI; and (3) ordering the Indemnitors to pay collateral security as required by subparagraph 3(a) of the GAI.[21] In support of the request, Western Surety argues that it has satisfied the four elements necessary to demonstrate entitlement to injunctive relief – namely, that it is likely to succeed on the merits of its claims, that it will suffer irreparable harm if an injunction is not granted, that the harm it faces outweighs the burden that would be imposed on the Indemnitors by the issuance of the injunction, and that the injunction would serve the public interest.[22]

---

[17] R. Docs. 1 at 13; 23-1 at 7; 23-5 at 1, 4; PI Exh. 11.
[18] R. Docs. 1 at 13; 23-1 at 7.
[19] R. Doc. 1 at 13-14; PI Exhs. 29; 30.
[20] R. Doc. 1 at 22-23.
[21] R. Doc. 23 at 1-2. At the May 4, 2023 preliminary injunction hearing, counsel for Western Surety clarified that the injunctive relief it sought was limited to enforcing the collateral security provision of the GAI. Therefore, the Court does not reach any issues related to Western Surety's requests for injunctive relief concerning indemnification and noninterference with Western Surety's rights under the GAI, as such requests have been abandoned.
[22] R. Doc. 23-1 at 11-17.

4

In opposition, the Indemnitors argue that the evidence Western Surety has offered in support of its motion for preliminary injunction only relates to its request to enforce the collateral security provision of the GAI.[23] Therefore, say Indemnitors, the motion should be denied as concerns Western Surety's request for a preliminary injunction ordering indemnification and noninterference with Western Surety's rights under the GAI.[24] As for the request to enforce the collateral security provision, the Indemnitors assert that Western Surety has failed to establish the four requisites for a preliminary injunction.[25] Alternatively, in the event the Court decides that a preliminary injunction should be issued ordering the Indemnitors to post collateral security in accordance with the GAI, they argue that Western Surety should be ordered "to demonstrate that the amount [of collateral security] demanded is reasonable under the circumstances."[26]

**III.   LAW & ANALYSIS**

A movant seeking a preliminary injunction must establish (1) a substantial likelihood that the it will prevail on the merits; (2) a substantial threat the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant if the injunction is denied outweighs the potential harm to the non-movant if the injunction is granted; and (4) that granting the injunction will not disserve the public interest. *Garcia v. Jones*, 910 F.3d 188, 190 (5th Cir. 2018). "A preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements." *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003). A preliminary injunction "may only be awarded upon a clear showing that the [movant] is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), and is never awarded as a matter of right but only within the sound discretion

---

[23] R. Doc. 30 at 7, 17.
[24] *Id.*
[25] *Id.* at 16-22.
[26] *Id.* at 18.

of the district court. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camensich*, 451 U.S. 390, 395 (1981); *see Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1178 (5th Cir. 1989) ("The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision on the merits."). Ultimately, granting a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light Co.*, 760 F.2d at 621.

Generally, a party is not required to prove its case in full at a preliminary injunction hearing, so the evidence is often less complete than in a trial on the merits; and, because a federal court does not render a final judgment on the merits at the preliminary injunction stage, its findings of fact and conclusions of law are not binding at a trial on the merits. *Camensich*, 451 U.S. at 395. "Furthermore, at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. Thus, the district court can accept evidence in the form of deposition transcripts and affidavits." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (citation omitted).

### A. Substantial Likelihood of Success on the Merits

"To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). A preliminary injunction should not issue if "the law on the question at the heart of the dispute does not favor [the movant's] position." *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 225 (5th Cir. 2010).

The Indemnitors "do[] not dispute Western Surety's characterization" of the provisions of the GAI regarding collateral security.²⁷  Indeed, the Indemnitors expressly state that "Magee does not contend that the GAI is ambiguous."²⁸  And, notwithstanding the Indemnitors' argument that Western Surety's assertions of loss are based on "hearsay" and other "self-serving" statements,²⁹ this Court "may rely on otherwise inadmissible evidence, including hearsay evidence," at the preliminary injunction stage.  *Sierra Club*, 992 F.2d at 551.  The Indemnitors are left to contend, then, that Western Surety cannot demonstrate a substantial likelihood of success on its demand for collateral security under the GAI because senior liens exist on property the Indemnitors say they would have to sell in order to satisfy their duty to furnish collateral security.  But this argument is without merit because it puts the cart before the horse.  The Indemnitors' *ability* to post collateral security in an amount and of a kind acceptable to Western Surety has no bearing on the Indemnitors' *obligation* to furnish collateral security under the GAI.  The Indemnitors cannot claim that Western Surety has failed to demonstrate a substantial likelihood of success on its demand for collateral security simply because the assets that could be used in satisfaction of their obligation to furnish collateral security are encumbered by other security interests.  Thus, because the Indemnitors do not dispute both that the GAI gives Western Surety the right to demand collateral security, and that the Indemnitors have not posted such security,³⁰ the Court concludes that Western Surety has demonstrated a substantial likelihood of success on its demand for

---

²⁷ R. Doc. 30 at 4.
²⁸ *Id.* at 16.
²⁹ *Id.* at 17.
³⁰ In the joint stipulation of facts introduced at the May 4, 2023 preliminary injunction hearing, the parties stipulate that the GAI "by its terms requires each Indemnitor" to post collateral security, R. Doc. 38-1 at 2, and that "[t]he Indemnitors did not deposit cash collateral with Western Surety." *Id.* at 4.  Therefore, there is no dispute that (1) the GAI imposes an obligation on the Indemnitors to deposit collateral security with Western Surety, and (2) the Indemnitors failed to do so.

collateral security under the GAI. *See, e.g.*, *Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, 2019 WL 1755525, at *6-7 (E.D. La. Apr. 19, 2019).

### B. Substantial Threat of Irreparable Injury

To prevail on the second element of a preliminary injunction, the movant must show that the threat of injury is likely and irreparable. *See Winter*, 555 U.S. at 22. An injury is irreparable if it cannot be adequately compensated by money damages. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Thus, "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). Equitable relief is warranted when the injury constitutes "either continuing harm or a real and immediate threat of repeated injury in the future." *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992).[31]

Courts have recognized that an indemnitor's failure to collateralize a surety constitutes an injury that cannot be remedied with damages because it amounts to loss of the bargained-for right to be collateralized. *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Indus. Com. Structures, Inc.*, 2012 WL 4792906, at *3 (M.D. Fla. Oct. 9, 2012) ("[T]he nature of the injury in collateral security provision cases is the lack of collateralization while claims are pending, and nothing can remedy that injury after the fact."); *see also Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, 2022 WL 16552815, at *39 & n.363 (E.D. La. Oct. 31, 2022) (collecting cases). To demonstrate irreparable harm in relation to a demand for collateral security, a surety must show

---

[31] Although Western Surety cites to *Wingsco Energy One v. Vanguard Groups Resources 1984, Inc.*, 1989 WL 223756, at *2 (S.D. Tex. Nov. 15, 1989), for the proposition that a surety is not required to prove irreparable harm for the issuance of a preliminary injunction, *Wingsco* discusses the surety's entitlement to *quia timet* relief, a common-law remedy distinct from a preliminary injunction. *See Int'l Fid. Ins. Co. v. Talbot Constr., Inc.*, 2016 WL 8814367, at *3-4 (N.D. Ga. Apr. 13, 2016). However, Western Surety, as a surety seeking a preliminary injunction to enforce its right to collateral under the GAI, must establish irreparable harm. *Id.*

that its inability to collect amounts that may become owed by an indemnitor is imminent, including, for example, showing that an indemnitor faces dire financial straits or bankruptcy, thereby increasing the likelihood that damages may not be recovered upon a later judgment awarding specific performance. *See, e.g.*, *Travelers Cas. & Surety Co. of Am. v. Padron*, 2017 WL 9360906, at *4-5, *8-10 (W.D. Tex. Aug. 2, 2017); *W. Sur. Co. v. PASI of La., Inc.*, 334 F. Supp. 3d 764, 796 (M.D. La. Sept. 25, 2018); *Amegy Bank Nat'l Ass'n v. Monarch Flight II, LLC*, 2011 WL 6091807, at *7 (S.D. Tex. Dec. 7, 2011). When this showing is made, injunctive relief protects "'three interests of the surety: the bargained-for benefit of collateral security, avoidance of present exposure to liability during pending litigation against indemnitors, and avoidance of risk that, should [i]ndemnitors become insolvent, the surety will be left as a general unsecured creditor, frustrating the purpose of the indemnity agreement.'" *Padron*, 2017 WL 9360906, at *10 (quoting *Int'l Fid. Ins. Co.*, 2016 WL 8814367, at *7). Indeed, the Fifth Circuit has observed that a claimant's inability to collect a judgment due to the judgment-debtor's insolvency or "initiation of bankruptcy proceedings" can constitute irreparable harm. *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014) (citing *Molex, Inc. v. Nolen*, 759 F.2d 474, 477-78 (5th Cir. 1985)).

Here, the Indemnitors comprise four corporate entities (Magee Excavation, Magee Builders, Magee Equipment, and Magee Development) and two individuals (Skip and Jessica Magee). The Indemnitors have stipulated that three of the corporate entities (Magee Builders, Magee Equipment, and Magee Development) have no assets.[32] And the evidence bearing on the financial condition of the remaining corporate entity, Magee Excavation, shows that it has no ability to satisfy a future judgment in favor of Western Surety.[33] For example, Magee Excavation's

---

[32] R. Doc. 38-1 at 4.
[33] *See, e.g.*, PI Exh. 43 (Magee Excavation financial statement).

9

balance sheet indicates that, as of February 28, 2023, the company was operating at a net loss of $4.16 million.[34] Additionally, correspondence from the company's officers leading up to and following Western Surety's initiation of this lawsuit indicates that Magee Excavation was forced to abandon the five projects because of its financial condition.[35] Finally, the Indemnitors themselves stipulate that all of the assets Magee Excavation *could* use to satisfy its obligation to deposit collateral security are already encumbered by other security interests.[36] Therefore, the record evidence clearly demonstrates that the four corporate entities are in dire financial straits, if not insolvent, and are incapable of paying a future judgment. The record evidence paints a similar picture of the remaining Indemnitors, Skip and Jessica Magee.[37] Accordingly, Western Surety has satisfied its burden of showing that it would suffer irreparable injury if a preliminary injunction does not issue ordering the Indemnitors to deposit collateral security.

## C. Balance of Hardships

Under the third element for a preliminary injunction, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)). "The third factor requires the plaintiff to establish that his irreparable harm is greater than the hardship that the preliminary injunction would cause the defendant." *DS Waters of Am., Inc. v. Princess Abita Water, LLC*, 539 F. Supp. 2d 853, 863 (E.D. La. 2008) (citing *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997)).

---

[34] *Id.*
[35] *See, e.g.*, PI Exhs. 18; 19; 20; 26; 27; 34.
[36] R. Doc. 38-1 at 4; *see also* PI Exh. 45.
[37] *See, e.g.*, PI Exhs. 27; 44 (reflecting a net worth of negative $10 million without Western Surety's contingent liability and a net worth of negative $38 million with it).

In the absence of an injunction, and so without the benefit of its bargained-for right to collateralization under the GAI, Western Surety would face liability for the full sum of the eight penal bonds on claims asserted by the project owners and unpaid contractors, subcontractors, and suppliers. Conversely, a preliminary injunction will simply compel the Indemnitors to perform an obligation to which they agreed in the GAI. Courts have found that the balance of these hardships favors the surety. *See, e.g.*, *Padron*, 2017 WL 9360906, at *12 (holding that the balance of hardships weighed in favor of surety since it would otherwise face the prospect of loss without being collateralized); *Hartford Fire Ins. Co. v. 4-H Ventures, Inc.*, 2008 WL 11389579, at *4 (S.D. Tex. June 25, 2008) (enforcing collateral security provision because harm to surety in not protecting its bargain outweighed harm to indemnitors in having to make deposit they expressly agreed to make); *Int'l Fid. Ins. Co. v. Anchor Env't, Inc.*, 2008 WL 1931004, at *7 (E.D. Pa. May 1, 2008) (weighing balance of hardships in favor of surety, the court observed: "Defendants are not unfairly prejudiced by being held to the Agreement of Indemnity to which they were signatories."); *Great Am. Ins. Co. v. Conart Inc.*, 2006 WL 839197, at *6 (M.D. Ga. Mar. 29, 2006) (holding that balance of hardships favored surety given harm it faced in defending principal's bonded claims in absence of injunction); *Travelers Cas. & Sur. Co. v. Ockerlund*, 2004 WL 1794915, at *5 (N.D. Ill. Aug. 6, 2004) (holding that the balance of hardships favored surety because it would face "serious harm" of using its own funds to defend or pay claims despite indemnitors' promises to the contrary). Western Surety has demonstrated that the hardship it will face if an injunction does not issue outweighs the threatened harm to Indemnitors posed by the injunction.[38]

---

[38] This conclusion holds notwithstanding the Indemnitors' argument that a preliminary injunction ordering the payment of collateral security will "force" Magee Excavation to "convert[] property that it owns and is subject to a security interest in favor of [a] third party" in order to amass the funds necessary to deposit collateral security. R. Doc. 30 at 19. Aside from being a concession of the Indemnitors' dire financial condition, this argument is premature

### D. Public Interest

Finally, the fourth element one seeking a preliminary injunction must establish is that granting the injunction will not disserve the public interest. *Miss. Power & Light Co.*, 760 F.2d at 621. When considering the public interest in a contract made between two private parties, a court is not constrained to the immediate interests of the parties to the contract but considers the situation of the public as it would be affected by injunctive relief. *Id.* at 625-26. Generally, the public has an interest in the enforcement of valid contracts and the ongoing solvency of sureties. *See Indus. Com. Structures*, 2012 WL 4792906, at *4 ("Courts have recognized that the public interest favors enforcement of contracts as well as solvency of sureties."). Courts have enforced indemnity agreements in similar contexts where the bonded construction project provides vital public works improvements, such as flood protection. *See, e.g.*, *Padron*, 2017 WL 9360906, at *13; *Anchor Env't*, 2008 WL 1931004, at *7; *Fucich Contracting, Inc.*, 2019 WL 1755525, at *12.

Here, the Indemnitors concede that the public has an interest in the enforcement of valid contracts and the solvency of sureties.[39] But they argue that those interests are outweighed by the public's competing interests "in honoring and preserving lending relationships and in protecting security interests and their ranking with banks and other financial entities."[40] The Indemnitors assert that because of Western Surety's "own failure" to perfect its security interest in the Indemnitors' collateral assets before those assets were encumbered by third-party interests, the enforcement of the collateral security provision by way of preliminary injunction would "force"

---

as any preliminary injunction would only order the Indemnitors to post collateral security. It would not dictate the particular assets to be posted or supplant any senior security interests. Rather, the Indemnitors would be compelled to identify and gather those assets that they can lawfully convert to cash or cash equivalents to satisfy their collateral security obligation.

[39] R. Doc. 30 at 20.
[40] *Id.*

them to prejudice the rights of the senior third-party lienholders.[41] Not so. A preliminary injunction at this juncture will only order the Indemnitors to post collateral security. This may well require the Indemnitors, in collaboration with Western Surety, to identify assets – including any portion of assets unencumbered by senior-ranking security interests – that Western Surety believes will satisfy their obligation. Third-party lienholders are more than capable of protecting their security interests in Magee Excavation's assets and, indeed, one such party has sought to intervene in this case to do so.[42] Therefore, the public's interest in "preserving lending relationships and in protecting security interests" is not impeded by a preliminary injunction and, in any event, is eclipsed in these circumstances by the public's competing interest in the enforcement of valid contracts, the solvency of sureties, and the completion of vital public works projects. Thus, Western Surety has shown that the issuance of a preliminary injunction ordering the Indemnitors to comply with the collateral security provision of the GAI does not disserve the public interest, but, in fact, advances it.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Western Surety's application for preliminary injunction (R. Doc. 23) is GRANTED in part. However, the Court reserves decision on the amount of collateral sufficient to discharge Western Surety's loss or anticipated loss, so no preliminary injunction will issue until the amount of collateral the Indemnitors are to provide is determined. Given the clarification by Western Surety's counsel at the preliminary injunction hearing, the application for preliminary

---

[41] *Id.* at 20-21. Again, this argument is another concession of the Indemnitors' dire financial condition, *see supra* note 38, and the Court's acceptance of it would tend to undermine the public's interest in the enforcement of valid contracts, as it would have the effect of relieving the Indemnitors from their immediate obligation to post collateral security simply because they claim not to have the financial ability to discharge the contractual obligations they voluntarily assumed when executing the GAI.

[42] *See* R. Doc. 36.

injunction, insofar as it requests an order directing the Indemnitors to indemnify Western Surety and to refrain from interfering with Western Surety's rights under the GAI, is DENIED.

IT IS FURTHER ORDERED that Western Surety shall file a memorandum, which is to address the amount of collateral sufficient to discharge its loss or anticipated loss, no later than Monday, May 22, 2023, and that the Indemnitors shall file a memorandum in response no later than Wednesday, May 31, 2023.  The Court shall hold an evidentiary hearing and hear argument on the amount-of-collateral issue on Friday, June 2, 2023, at 1:30 p.m.

New Orleans, Louisiana, this 11th day of May, 2023.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE