UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WESTERN SURETY COMPANY | CIVIL ACTION |
| VERSUS | NO. 23-1097 |
| MAGEE EXCAVATION & DEVELOPMENT, LLC, *et al.* | SECTION M (2) |

## ORDER & REASONS

Before the Court is a motion for temporary restraining order and preliminary injunction filed by intervenor First Horizon Bank ("First Horizon").[1] Defendants Magee Excavation & Development, LLC, Magee Builders, LLC, Magee Equipment, LLC, and Magee Development, LLC (collectively, the "Magee entities") respond in opposition.[2] Plaintiff Western Surety Company ("Western Surety") responds, stating that while it has no objection to the substance of First Horizon's motion, it asks that any injunctive relief granted in favor of First Horizon not interfere with Western Surety's independent right to receive collateral security from the Magee entities and from individual defendants Skip C. Magee and Jessica A. Magee (together with the Magee entities, the "Indemnitors").[3] The Court held an evidentiary hearing on the motion for temporary restraining order and preliminary injunction on June 29, 2023, whereupon the Court temporarily ordered that the Magee entities were prohibited from transferring, selling, or converting any of their assets subject to a superior lien of First Horizon, pending additional briefing, after which the Court would issue a separate ruling on the request for a preliminary injunction.[4] Thereafter, the parties submitted post-hearing briefs outlining their respective

---

[1] R. Doc. 72.
[2] R. Doc. 81.
[3] R. Doc. 78 at 1-2.
[4] R. Doc. 95.

positions on the issuance of a preliminary injunction in favor of First Horizon.[5]  Having considered the parties' briefs, the evidence,[6] argument presented at the hearing, and the applicable law, the Court issues this Order & Reasons granting the motion.

I.   **BACKGROUND**[7]

This matter arises out of Western Surety's issuance of performance and payment bonds to Magee Excavation & Development, LLC ("Magee Excavation") for public construction projects located throughout southeastern Louisiana.  After Magee Excavation failed to complete five of the eight public works projects for which Western Surety had issued bonds, the surety filed suit against Magee Excavation and the remaining Indemnitors in an effort to enforce its rights to indemnification of and collateralization for losses associated with the project bonds, as established by the General Agreement of Indemnity ("GAI") executed between Western Surety and the Indemnitors.  Western Surety then filed a motion for preliminary injunction to compel the Indemnitors to comply with the collateral security provision of the GAI.  The Court granted the motion and, on June 22, 2023, set the amount the Indemnitors must deposit in collateral security at $20,141,632.45.[8]  During the pendency of Western Surety's motion for preliminary injunction, First Horizon sought to intervene in the action, arguing that it had made three loans – totaling $5.1 million (the "Loans") – to Magee Excavation and Magee Equipment, LLC (together, the "Borrowers") allegedly secured by liens senior to the collateral security interests of Western Surety.[9]  On May 24, 2023, the magistrate judge granted First Horizon's motion to intervene.[10]

---

[5] R. Docs. 97; 98; 99.
[6] This evidence includes the exhibits admitted at the hearing (hereinafter, "PI Exh."), as well as the testimony of Sydney Gibbs, the First Horizon loan officer responsible for the loan files associated with Magee Excavation and Development, LLC and Magee Builders, LLC.
[7] A more complete recitation of the facts can be found in the Court's May 11, 2023 Order & Reasons, R. Doc. 40, and June 7, 2023 Order & Reasons. R. Doc. 66.
[8] R. Doc. 92.
[9] *See* R. Docs. 36 (motion to intervene); 56 (complaint-in-intervention).
[10] R. Doc. 54.

In its complaint-in-intervention, First Horizon alleges that the Loans it made to the Borrowers are secured by "a valid, enforceable, and first-priority security interest and blanket lien on all of the assets of the Borrowers."[11] Additionally, the bank alleges that Magee Development, LLC, Magee Builders, and Skip C. Magee (collectively, the "Guarantors") are guarantors on the Loans.[12] According to First Horizon, the Borrowers have defaulted on the Loans for failure to make payments.[13] On May 24, 2023, during a scheduled appraisal of the Borrowers' assets, First Horizon learned that the Magee entities had sold or disposed of all but seven pieces of equipment out of the more than 70 originally appraised in 2020 as security on the Loans.[14] Thereafter, First Horizon filed the instant motion for temporary restraining order and preliminary injunction in an effort to prevent the Borrowers from selling or disposing of the remaining assets in which the bank holds a first-priority security interest.[15]

## II.   PENDING MOTION

In its motion and post-hearing brief, First Horizon urges that a preliminary injunction is appropriate because the Borrowers have sold and are selling or otherwise disposing of assets encumbered with first-priority First Horizon liens without the bank's knowledge or consent.[16] First Horizon argues that if the Borrowers are permitted to sell or dispose of assets subject to those liens during the pendency of the action, it will suffer irreparable harm because the Borrowers will likely be incapable of satisfying a future judgment, given their financial status.[17] Moreover, First Horizon submits that it has a substantial likelihood of success on the merits because the uncontroverted evidence shows that the Borrowers are indebted to First Horizon and are in default

---

[11] R. Doc. 56 at 3.
[12] *Id.* at 7-9.
[13] *Id.* at 10.
[14] *Compare* PI Exh. 18 (2020 asset appraisal) *with* PI Exh. 19 (2023 asset appraisal).
[15] R. Doc. 72.
[16] R. Docs. 72-1 at 10; 98 at 5.
[17] R. Doc. 98 at 5-8.

under the loan agreements.[18]  Moreover, First Horizon observes that the Borrowers do not dispute the obligations they owe to First Horizon by operation of the loan and security agreements.[19]  As for the balance of equities, First Horizon submits that the relief it requests is narrow, as it "does not request a blanket prohibition on all equipment sales," and observes that the Borrowers could simply surrender any collateral equipment "in partial satisfaction of the debts owed" to it.[20]  Finally, First Horizon maintains that the public has an interest "in enforcing the terms of a valid contract."[21]  Thus, in sum, the bank concludes that it has demonstrated its entitlement to injunctive relief.

In opposition, the Magee entities "do not dispute the loan documents in favor of First Horizon or the filing of a UCC 1 in favor of First Horizon."[22]  However, they dispute First Horizon's entitlement to all of the business assets of the Borrowers and maintain that the bank has an adequate remedy at law (*viz.*, foreclosure) that it refuses to invoke.[23]  As for the balance of equities, the Magee entities state that they "have no resources at [their] disposal to protect and preserve the collateral" should they be enjoined from selling the remaining equipment.[24]  Regarding whether the interests of the public are served by the issuance of a preliminary injunction, the Magee entities argue that "[p]ublic policy is not advanced by the Court's rewarding a creditor that refuses to protect its own collateral."[25]  Therefore, say the Magee entities, First Horizon has failed to demonstrate its entitlement to a preliminary injunction.[26]

---

[18] *Id.* at 3-5.
[19] R. Docs. 72-1 at 10; 98 at 3-5.
[20] R. Doc. 98 at 9.
[21] *Id.* at 10.
[22] R. Doc. 81 at 2.
[23] R. Docs. 81 at 2, 7; 97 at 8-10.
[24] R. Doc. 97 at 10.
[25] *Id.* at 11.
[26] In its post-hearing brief, Western Surety requests only that, if the Court grants a preliminary injunction in favor of First Horizon, "the order should be limited in two ways: (1) the order should explicitly recognize that it does

### III. LAW & ANALYSIS

A movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant if the injunction is denied outweighs the potential harm to the nonmovant if the injunction is granted; and (4) that granting the injunction will not disserve the public interest. *Garcia v. Jones*, 910 F.3d 188, 190 (5th Cir. 2018). "A preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements." *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003). A preliminary injunction "may only be awarded upon a clear showing that the [movant] is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), and is never awarded as a matter of right but only within the sound discretion of the district court. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1178 (5th Cir. 1989) ("The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision on the merits."). Ultimately, granting a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light Co.*, 760 F.2d at 621.

Generally, a party is not required to prove its case in full at a preliminary injunction hearing, so the evidence is often less complete than in a trial on the merits; and, because a federal court does not render a final judgment on the merits at the preliminary injunction stage, its findings of

---

not affect this Court's prior entry of a preliminary injunction in favor of Western Surety; and (2) relief should only be entered against First Horizon's Borrowers, but not its Guarantors." R. Doc. 99 at 1-2.

fact and conclusions of law are not binding at a trial on the merits. *Camenisch*, 451 U.S. at 395. "Furthermore, at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. Thus, the district court can accept evidence in the form of deposition transcripts and affidavits." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (citation omitted).

First Horizon, as the movant, must establish the four factors necessary for the issuance of preliminary injunctive relief. The Court begins with whether the bank has a substantial likelihood of success on the merits of its claims against the Borrowers. "To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). A preliminary injunction should not issue if "the law on the question at the heart of the dispute does not favor [the movant's] position." *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 225 (5th Cir. 2010).

Here, First Horizon brings breach-of-contract claims against the Borrowers and Guarantors for their failure to pay the loan balances under the terms of the loan and guaranty agreements.[27] The Magee entities effectively concede that First Horizon will prevail on these claims:

> It is admitted that ... First Horizon will be able to prove that 1) the Magee Corporate Defendants are indebted to First Horizon under the various promissory notes that were executed in favor of First Horizon; and 2) First Horizon has a valid and perfected lien on equipment (exclusive of titled vehicles and property subject to a purchase money security interest ["PMSI"]) and accounts.[28]

Thus, the Magee entities neither dispute the Borrowers' indebtedness to First Horizon nor the validity of the bank's security interests in certain assets owned by the Borrowers. First Horizon,

---

[27] R. Doc. 56 at 15-18.
[28] R. Doc. 97 at 7.

6

for its part, disclaims entitlement to a security interest in any titled vehicles or equipment and any collateral "encumbered by a properly perfected" PMSI.[29] Thus, at this stage, no substantive dispute exists as to the Borrowers' indebtedness to First Horizon or the validity of the bank's security interests in certain collateral owned by the Borrowers. Therefore, First Horizon has demonstrated a substantial likelihood of success on the merits.

To prevail on the second element of a preliminary injunction, the movant must show that the threat of injury is likely and irreparable. *See Winter*, 555 U.S. at 22. An injury is irreparable if it cannot be adequately compensated by money damages. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Thus, "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). Equitable relief is warranted when the injury constitutes "either continuing harm or a real and immediate threat of repeated injury in the future." *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992). The Fifth Circuit has observed that a claimant's inability to collect a judgment due to the judgment-debtor's insolvency or "initiation of bankruptcy proceedings" can constitute irreparable harm. *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014) (citing *Molex, Inc. v. Nolen*, 759 F.2d 474, 477-78 (5th Cir. 1985)).

Here, First Horizon has demonstrated its likely inability to collect a judgment from the Borrowers due to their financial condition. As the Court has already found in its May 11, 2023 Order & Reasons, "the record evidence clearly demonstrates that the [Magee entities] are in dire

---

[29] R. Doc. 98 at 4. However, because First Horizon's October 19, 2021 security agreement with Magee Excavation does not exclude equipment encumbered with a PMSI lien from the definition of collateral, First Horizon "does assert a security interest in the excess equity in, or cash proceeds from, such [e]quipment ow[n]ed by Magee Excavation (as opposed to Magee Equipment)." *Id.* at 5 n.8.

financial straits, if not insolvent."[30] Subsequent events have only reaffirmed that conclusion. For example, by their own admission, the Magee entities have already sold or disposed of equipment encumbered by First Horizon's liens,[31] and the testimony of Sydney Gibbs, the First Horizon loan officer responsible for the Borrowers' file, indicates that the sale or disposition of these assets occurred without the bank's knowledge or consent. Between the testimony of Gibbs and a comparison of the appraisals conducted of the Borrowers' business assets in 2020 and 2023, the evidence supports the conclusion that the Borrowers are no longer operating in the ordinary scope of their businesses.[32] Further, in their post-hearing brief in opposition to First Horizon's motion for preliminary injunction, the Magee entities concede that they "ha[ve] no resources at [their] disposal to protect and preserve the collateral" should they be enjoined from selling or disposing of it.[33] And, at the preliminary injunction hearing, counsel for the Magee entities stated that essentially no funds remain in the bank accounts his clients maintain at First Horizon. As such, First Horizon has satisfied its burden of showing that it faces a substantial threat of irreparable injury in the absence of injunctive relief, as the Borrowers are unlikely to be capable of satisfying a future judgment and have admitted to disposing of assets subject to valid, enforceable First Horizon liens in violation of the obligations they owe to the bank by virtue of the loan and security agreements.

Under the third element for a preliminary injunction, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)). "The third factor requires the plaintiff to establish that his irreparable harm

---

[30] R. Doc. 98 at 6.
[31] *See* PI Exh. 20.
[32] *See* PI Exhs. 18; 19.
[33] R. Doc. 97 at 10.

is greater than the hardship that the preliminary injunction would cause the defendant." *DS Waters of Am., Inc. v. Princess Abita Water, L.L.C.*, 539 F. Supp. 2d 853, 863 (E.D. La. 2008) (citing *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997)).

In the absence of an injunction, the Magee entities might continue to dispose of assets encumbered by first- or second-priority First Horizon liens without the bank's knowledge or consent, effectively denying First Horizon its bargained-for rights under the loan and security agreements. Given the Borrowers' precarious financial condition, continued dissipation of assets in which First Horizon holds first-priority liens could result in the bank being unable to recover *any* portion of the outstanding balances in the future, as the evidence makes plain that the Borrowers are functionally insolvent. Conversely, a preliminary injunction would simply compel the Borrowers to comply with their obligations under the loan and security agreements. Moreover, contrary to the Magee entities' contention, the relief sought by First Horizon will not categorically prohibit the sale of assets in which the bank holds a first-priority lien, as the bank simply requests that, for any such sale, it receive notice of the sale, an opportunity to consent to the sale, and remittance to it of proceeds resulting from any sale.[34] And, as First Horizon observes, the relief requested would permit the Borrowers, in the alternative, to surrender any equipment to the bank should they be financially unable to store and preserve it.[35] As such, First Horizon has demonstrated that the hardship it will face if an injunction does not issue outweighs the threatened harm to the Borrowers posed by the injunction.

Finally, the fourth element one seeking a preliminary injunction must establish is that granting the injunction will not disserve the public interest. *Miss. Power & Light Co.*, 760 F.2d at 621. When considering the public interest in a contract made between two private parties, a court

---

[34] R. Doc. 98 at 9.
[35] *Id.*

9

is not constrained to the immediate interests of the parties to the contract but considers the situation of the public as it would be affected by injunctive relief. *Id.* at 625-26. Courts have recognized that the public has an interest in the enforcement of valid contracts. *See, e.g., First Nat. Ins. Co. v. Sappah Bros., Inc.*, 771 F. Supp. 2d 569, 576 (E.D.N.C. 2011); *Travelers Cas. & Surety Co. of Am. v. Padron*, 2017 WL 9360906, at *13 (W.D. Tex. Aug. 2, 2017).

Here, the public has an interest not only in the enforcement of valid contracts, but also in the prohibition of the dissipation of assets used to secure the rights and obligations established by a valid contract. The Borrowers neither contest their indebtedness to First Horizon nor First Horizon's security interest in certain of their assets. And they concede that they have sold or otherwise disposed of assets subject to the bank's security interests – security interests granted to First Horizon as partial security for the loans the bank extended to them. Thus, the issuance of a preliminary injunction here serves the public's dual interests in enforcing valid contracts and prohibiting behavior that undermines the rights and obligations established by such contracts. Therefore, the public interest is served by the issuance of a preliminary injunction in favor of First Horizon.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that First Horizon's motion for preliminary injunction (R. Doc. 72) is GRANTED.

IT IS FURTHER ORDERED that Magee Equipment is enjoined from selling, transferring, converting, or otherwise disposing of any collateral in which First Horizon has a senior lien without (i) obtaining First Horizon's consent to such sale, transfer, or disposition; and (ii) paying any

proceeds from the sale, transfer, or disposition to First Horizon, up to the value of First Horizon's liens on such collateral.

IT IS FURTHER ORDERED that Magee Equipment is enjoined from selling, transferring, converting, or otherwise disposing of any collateral in which First Horizon has an inferior lien, without (i) providing notice of such sale, transfer, or disposition to First Horizon at least forty-eight (48) hours prior to any proposed sale, transfer, or disposition; and (ii) providing all excess proceeds derived from such sale, transfer, or disposition, after satisfaction of all senior liens, to First Horizon.

IT IS FURTHER ORDERED that Magee Equipment is not enjoined from selling, transferring, converting, or otherwise disposing of any assets in which First Horizon does not have a lien, including but not limited to titled equipment or equipment in which there is a perfected purchase money security interest ("PMSI") lien.

IT IS FURTHER ORDERED that Magee Equipment is enjoined from spending or transferring the funds held in any bank accounts of Magee Equipment (to the extent that such funds constitute the proceeds of First Horizon's collateral, including but not limited to, accounts and equipment).

IT IS FURTHER ORDERED that Magee Excavation is enjoined from selling, transferring, converting, or otherwise disposing of any assets in which First Horizon has a senior lien without (i) obtaining First Horizon's consent to such sale, transfer, or disposition; and (ii) paying any proceeds from the sale, transfer, or disposition to First Horizon, up to the value of First Horizon's liens on such collateral.

IT IS FURTHER ORDERED that Magee Excavation is enjoined from selling, transferring, converting, or otherwise disposing of any assets in which First Horizon has an inferior lien, without

(i) providing notice of such sale, transfer, or disposition to First Horizon at least forty-eight (48) hours prior to any proposed sale, transfer, or disposition; (ii) if Magee Excavation contends that such collateral is subject to a properly perfected PMSI, providing a copy of the security agreement evidencing such PMSI no less than 48 hours prior to any proposed sale, transfer, or disposition; and (iii) providing all excess proceeds derived from such sale, transfer, or disposition, after satisfaction of all senior liens, to First Horizon.

IT IS FURTHER ORDERED that Magee Excavation is not enjoined from selling, transferring, converting, or otherwise disposing of any assets in which First Horizon does not have a perfected security interest, including but not limited to titled equipment.

IT IS FURTHER ORDERED that Magee Excavation is enjoined from spending or transferring the funds held in any bank accounts of Magee Excavation (to the extent that such funds constitute the proceeds of First Horizon's collateral, including but not limited to, accounts and equipment).

IT IS FURTHER ORDERED that Magee Excavation, Magee Equipment, and First Horizon shall provide written notice, which includes email, to counsel of record for Western Surety of any pending sale of assets that are the subject of this Order at least 48 hours prior to the transfer of the asset.

IT IS FURTHER ORDERED that nothing in this Order shall be deemed to be an adjudication of any perfected security interest or lien rights that currently encumber the property owned by Magee Excavation or Magee Equipment. Accordingly, this Order does not affect the rank, validity, or priority of any perfected security interest.

AND IT IS FURTHER ORDERED that nothing in this Order is intended to modify or limit this Court's June 22, 2023 Order issuing a preliminary injunction in favor of Western Surety (R. Doc. 92).

New Orleans, Louisiana, this 11th day of July, 2023.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE